United States Court of Appeals
Fifth Circuit

**F I L E D**

May 31, 2005

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 04-70034

---

BRENT RAY BREWER,

Petitioner-Appellee,

VERSUS

DOUG DRETKE,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before JOLLY, SMITH, and GARZA,
Circuit Judges.

JERRY E. SMITH, Circuit Judge.

The district court conditionally granted, pursuant to 28 U.S.C. § 2254, death row inmate Brent Brewer's petition for writ of habeas corpus, holding that the special issues submitted during his punishment phase were a constitutionally inadequate vehicle for the jury to give effect to his mitigating evidence. The state appeals on the ground that the court failed properly to assess the reasonableness of the state court's adjudication as required by 28 U.S.C. § 2254(d) and on the ground that it failed correctly to apply valid Supreme Court and Fifth Circuit precedent. We reverse and

render judgment denying the habeas petition.

## I.

Brewer was sentenced to death for a murder committed during a robbery. At trial, he introduced a variety of mitigating evidence, including the following facts: that he had a bout with depression three months before the murder; that he was briefly hospitalized for that depression; that his co-defendant, a woman with whom he was apparently obsessed, dominated and manipulated him; that he had been abused by his father; that he had witnessed his father abuse his mother; and that he had abused drugs. Brewer submitted at least seven proposed instructions designed to give effect to this mitigating evidence, but the trial court denied all of them, instead requiring only that the jury answer two relevant special questions relating to deliberateness and potential for future dangerousness.

The conviction was affirmed on direct appeal,[1] after which Brewer initiated what were ultimately unsuccessful state habeas proceedings.[2] He then filed the instant federal habeas petition. After requesting supplemental briefing concerning *Tennard v. Dretke*, 124 S. Ct. 2562 (2004), the district court, as we have said, granted conditional relief.

## II.
## A.

The Antiterrorism and Effective Death Penalty Act of 1996, at 28 U.S.C. § 2254(d), sets forth the conditions under which a court shall grant a petition for a writ of habeas corpus:

---

[1] *Brewer v. State*, No. 71,307 (Tex. Crim. App. 1994) (unpublished), *cert. denied*, 514 U.S. 1020 (1995).

[2] *Ex parte Brewer*, No. 46,587-01 (Tex. Crim. App. 2001) (unpublished).

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) addresses pure questions of law and mixed questions of law and fact. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts. *See id.*

Section 2254(d)(2) addresses pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceed-

ing.[3]

## B.

We review the federal district court's findings of fact for clear error and its conclusions of law *de novo*. *See Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001). The legal conclusion at issue is the holding that "[r]eviewing the evidence in light of the special issues, a jury would be very hard pressed to see the evidence presented as anything but aggravating. Failure to submit an instruction on mitigation evidence was an unreasonable application of federal law and Supreme Court precedent."[4] Section 2254(d)(1) therefore controls our review, and we conduct a *de novo* inquiry to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[5] We do so here by analyzing *de novo* the federal district court's decision to see whether it properly decided that the state court did not satisfy § 2254(d)(1).

---

[3] *See Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing). Factual determinations made by the state court are presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

[4] As we will discuss momentarily, this language—stating that the mitigating evidence was capable of nothing but an aggravating interpretation—seems somewhat at odds with language earlier in the opinion stating that "the evidence at Petitioner's trial does not fit squarely [in the dangerousness instruction] either. One could view the evidence as either aggravating or mitigating."

[5] The district court rejected seven additional habeas claims that Brewer included in his petition. Brewer does not cross-appeal these rulings.

## III.

The trial court instructed the jury, pursuant to article 37.071 of the Texas Code of Criminal Procedure (Vernon 1991), as follows:

### Special issue No. 1

Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant, BRENT RAY BREWER, that caused the death of the deceased, Robert Doyle Laminack, was committed deliberately and with the reasonable expectation that the death of the deceased would result?

### Special issue No. 2

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, BRENT RAY BREWER, would commit criminal acts of violence that would constitute a continuing threat to society?

## A.

We consider it appropriate to devote significant space to discussing the jurisprudence associated with article 37.071. In *Jurek v. Texas*, 428 U.S. 262, 272 (1976), the Court upheld the Texas statutory special issues approach in the punishment phase of capital trials, but did so on the explicit premise that the special issues were capable of an expansive construction to capture proper mitigation evidence. In *Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988), the Court made plain that, at least with respect to some mitigation evidence, deviating from the special issues approach is not necessary. Specifically, it found the "dangerousness" special issue was capable of capturing evidence of the petitioner's good behavior while incarcerated.

In *Penry v. Lynaugh*, 492 U.S. 302, 322 (1989) ("*Penry I*"), the Court held that the

3

two special issues were not sufficient to give mitigating effect to Penry's evidence of mental retardation and a history of abuse. It stated that each of those factors represents "a two-edged sword": [Each] may diminish [the petitioner's] blameworthiness for his crime even as it indicates there is a probability that he will be dangerous in the future." *Id.* at 324.

Following *Penry I*, this court developed a two-part test for determining whether the defendant's evidence requires a special mitigation instruction: (1) whether the proffered material was constitutionally relevant mitigating evidence, and (2) whether the proffered evidence was beyond the effective reach of the jurors.[6] We in turn defined "constitutionally relevant" evidence as that which was "due to the uniquely severe permanent handicaps with which the defendant was burdened through no fault of his own . . . ."[7] In *Tennard*, the Supreme Court flatly rejected that test of constitutional relevance and instructed us instead that the definition of relevance in this context is no different from the definition of constitutional relevance in most others: "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence . . . ."[8]

## B.
There are two possible circumstances with respect to mitigating evidence and special issues. Either the special issues are capable of giving *only* aggravating effect to the mitigating evidence, or they are capable of giving *both* mitigating and aggravating effect to the mitigating evidence. The Supreme Court has expressly sanctioned the latter and has held the former to be unconstitutional. *See Johnson v. Texas*, 509 U.S. 350, 368-69 (1993). In other words, a writ of habeas corpus may issue *only* where the special questions are capable of giving the mitigating evidence *exclusively* aggravating effect.

The state appears to believe that the district court erred in this regard, as it excerpts that court's statement that "[o]ne could view the evidence as aggravating or mitigating." At first blush the state seems correct, but when one examines the subsequent sentences of the district court's opinion, it becomes evident that the state misinterprets the holding.

The district court's next sentence reads that "[w]ithout the guidance of a proper instruction from the court, the jury was not given an opportunity to consider it as mitigating." The court continues, "Reviewing the evidence in light of the special issues, a jury would be hard pressed to see the evidence presented as anything but aggravating."

The state, then, takes the quoted language somewhat out of context. The district court was stating merely that *the evidence itself* was capable of being aggravating or mitigating. It was not stating that the *special instructions* were capable of giving that evidence both aggravating and mitigating effect. Not only does this appear to be the intended meaning when one reads the sentences surrounding the text the state excerpts, but in the part of the opinion in which the district court makes its ultimate holding on the issue, it explicitly states that the error flows from the jury's inability, given the special instructions, to give mitigat-

---

[6] *Smith v. Cockrell*, 311 F.3d 661, 680 (5th Cir. 2002) (internal citations and quotations omitted).

[7] *Graham v. Collins*, 950 F.2d 1009, 1029 (5th Cir. 1992) (en banc), *aff'd*, 506 U.S. 461 (1993).

[8] *Tennard*, 124 S. Ct. at 2570 (internal citations and quotations omitted.).

4

ing effect to mitigating evidence. The district court, therefore, did not misstate the law.

## C.

To conclude that the district court properly *stated* the law is not, however, to decide that it properly *applied* it. To determine whether a jury has sufficient vehicles for considering mitigating evidence, the habeas court must determine whether "there is no reasonable likelihood that the jury would have found itself foreclosed from considering the relevant aspects of the [mitigating evidence]." *Id.* at 368. We conduct a *de novo* inquiry into whether the district court applied this standard properly, and we conclude that it did not.

As we noted earlier, at trial Brewer introduced a variety of mitigating evidence, including the following facts: that he had a bout with depression three months before the murder; that he was briefly hospitalized for that depression; that his co-defendant, a woman with whom he was apparently obsessed, dominated and manipulated him; that he had been abused by his father; that he had witnessed his father abuse his mother; and that he had abused drugs. Apparently the district court seriously considered only the mental illness and drug abuse as potentially warranting habeas relief.[9]

Brewer offered evidence of a single hospitalization and a suicide note.

This circuit has accepted a distinction between mental retardation and mental illness.[10] A mental illness inquiry does not warrant any sort of adjustment to the standard two-pronged interrogatory, and we have rejected habeas petitions on these grounds on a number of occasions.[11] We likewise have rejected claims that mitigating evidence pertaining to substance abuse, without an adjustment to the sentencing issues, can support a *Penry* violation.[12] Although we decline to revisit specifically the rationale in each of these cases, it is sufficient to say that generally they stand for the proposition that, even under the two-

---

[9] (...continued) gating evidence.

[10] *See Robison v. Johnson*, 151 F.3d 256, 265-66 (5th Cir. 1998).

[11] *See, e.g., Hernandez v. Johnson*, 248 F.3d 344, 349 (5th Cir. 2001) (holding that the future dangerousness special issue was capable of giving effect to this mitigating evidence); *Lucas v. Johnson*, 132 F.3d 1069, 1082-83 (5th Cir. 1998) (holding that the deliberateness special issue was capable of giving this evidence effect). These cases remain good law even after *Tennard*, because *Tennard* overturned only Fifth Circuit methodology for determining what mitigating evidence is constitutionally relevant. *See Tennard*, 124 S. Ct. at 2571.

[12] *See, e.g., Harris v. Cockrell*, 313 F.3d 238, 242 (5th Cir. 2002) (holding that the "jury was able to give mitigating effect to the evidence of Harris's alcoholism through its answers to the first and second special issues"); *James v. Collins*, 987 F.2d 1116, 1121 (5th Cir. 1993) (holding that voluntary intoxication can be given effect through the deliberateness prong).

---

[9] There is considerable authority that evidence of a troubled childhood and child abuse falls within the scope of the special issues. *See, e.g. Johnson*, 509 U.S. at 367; *Graham*, 506 U.S. at 475; *Robertson v. Cockrell*, 325 F.3d 243, 249 (5th Cir. 2003), *overruled in part by Tennard*; *Davis v. Scott*, 51 F.3d 457, 462-65 (5th Cir. 1995); *Jacobs v. Scott*, 31 F.3d 1319, 1327 (5th Cir. 1994). For the remaining issues (other than mental illness and troubled childhood), it was at least reasonably likely that the special issue involving dangerousness did not foreclose consideration of the miti-
(continued...)

pronged special issue methodology, a jury can adequately incorporate evidence of mental illness and substance abuse into its decision calculus.

Therefore, the district court erred in granting Brewer's petition for a writ of habeas corpus. The judgment is REVERSED, and a judgment is RENDERED denying the petition for writ of habeas corpus.